No. 99-336

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 346N

IN RE THE MARRIAGE OF:

ELLEN M. JOHNSTON,

Petitioner/Respondent,

and

STANLEY W. JOHNSTON,

Respondent/Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

E. Lee LeVeque, Conklin, Nybo, LeVeque & Lanning, Great Falls, Montana

For Respondent:

Joan E. Cook, Great Falls, Montana

Submitted on Briefs: June 8, 2000
Decided: December 20, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Montana's Eighth Judicial District Court, Cascade County, found that a provision in Ellen and Stanley Johnston's first divorce decree was not binding upon Ellen Johnston in their second divorce, and that various assets acquired by Stanley either through inheritance or prior to their second marriage were to be included in the marital estate. The court also found that certain debts incurred by Stanley prior to formal dissolution were not marital debts. Stanley appeals. We reverse in part, affirm in part, and remand for entry of an amended decree in accordance with our decision.

¶3 Stanley states the issues on appeal as:

¶4 1. Whether the District Court erred in refusing to incorporate portions of the parties' 1976 decree of dissolution into the current decree as regards Stanley's equity in the house.

¶5 2. Whether the District Court erred by including within the marital estate a mutual fund gifted to Stanley from his mother.

¶6 3. Whether the District Court erred by including the boat and motor home in the marital estate.

¶7 4. Whether the District Court erred by allocating post-separation debts incurred by Stanley to be his sole responsibility.

¶8 5. Whether the District Court properly distributed the marital estate.

¶9 Ellen M. Johnston (Ellen) and Stanley W. Johnston (Stanley) were first married in 1966. Three children were born into this marriage, all of whom are now adults. The couple initially divorced in 1976. The divorce decree prescribed a disposition of marital assets as well as child support payable to Ellen. The couple began living together again just a few

months after the divorce. They did not comply with all of the provisions of the divorce decree; e.g., Stanley did not pay the court-ordered child support after he re-joined the household, and the home was not sold after the youngest child reached the age of majority. The issue of child support is not before this Court. Under the decree Ellen was to continue living in the home and Stanley was required to make the mortgage payments. Upon sale of the home Stanley was to receive recompense for the resulting equity from the mortgage payments he made from the time of the divorce to the time of sale and for any improvements made to the home. The parties remarried in September of 1981, a second divorce was later sought and a decree was entered in early 1999. The District Court found that the judgment from the first divorce decree, which allowed Stanley to recover equity from payments and improvements made to the home, was somehow invalid as the title to the home "never lost its character as a marital asset." The court also included other inherited assets bequeathed to Stanley by his mother upon her death, and a boat acquired by Stanley prior to the couple's second marriage, in the marital estate. Stanley moved to amend the judgment, and his motion was denied. Stanley appeals.

Issue 1

¶10 **Whether the District Court erred in refusing to incorporate portions of the parties' 1976 decree of dissolution into the current decree as regards Stanley's equity in the house.**

¶11 The District Court held that the judgment from the parties' 1976 divorce decree regarding the disposition of the family home had no force and effect. We disagree.

¶12 We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *In re the Marriage of Widhalm* (1996), 279 Mont. 97, 926 P.2d 748. We review the court's findings of fact to determine whether the findings are clearly erroneous. *In re Marriage of Engen* (1998), 289 Mont. 299, 961 P.2d 738. If the findings are not clearly erroneous, we will affirm the court's decision unless the court abused its discretion. *In re Marriage of Hogstad* (1996), 275 Mont. 489, 914 P.2d 584.

¶13 In addition, Rule 60, M.R.Civ.P., sets forth the correct legal procedure for seeking relief from a judgment or order. Such a request for relief must be sought not more than 60 days after service of notice of entry of judgment. Rule 60(b), M.R.Civ.P. The provisions of a decree relating to property division may not be revoked or modified unless the parties consent in writing or the court finds the existence of conditions justifying the reopening of a judgment under Montana's code, which conditions include such matters as mistake,

inadvertence and fraud. Section 40-4-208, MCA; Rule 60, M.R.Civ.P.; *See also In re Marriage of Hopper*, 1999 MT 310, ¶ 25, 297 Mont. 225, ¶ 25, 991 P.2d 960, ¶ 25 (holding that such fraud must be extrinsic and deny the unsuccessful party the opportunity to have a trial or to fully present her or his side of the case); *In re Marriage of Miller* (1995), 273 Mont. 286, 902 P.2d 1019 (reaffirming Rule 60(b) and holding that false or fraudulent representations or concealments made during court proceedings constitute intrinsic fraud and are not grounds for reopening a decree or judgment by an independent action; also overruling all previous cases distinguishing intrinsic and extrinsic fraud, and holding that dissolution cases will henceforth be treated the same as all other cases under Rule 60(b)). None of these circumstances or statutory bases are argued by Ellen.

¶14 Here, Ellen has waited over twenty years to argue that laches is also a legally acceptable basis for overturning the District Court's judgment in this case. We do not agree. The specific statutory language regarding modification of property settlements in dissolutions should prevail over such general doctrines. *See* § 1-2-102, MCA. We have previously held in nearly identical circumstances that a court cannot *sua sponte* vacate a judgment without the written consent of the parties or without a hearing. *In re Marriage of Nordberg* (1994), 265 Mont. 352, 357, 877 P.2d 987, 990.

¶15 We conclude that the District Court did not have jurisdiction in this case to in essence vacate the prior judgment and that the court erred in its interpretation of the law. The court's findings with regard to disposition of the home are clearly erroneous. We hold that the provisions of the 1976 divorce decree regarding disposition of the home are lawfully enforceable and Stanley should be awarded an amount consistent with the terms of the 1976 decree. Uncontroverted testimony during the second divorce proceedings indicate this amount would be in the range of $12,000. We reverse and remand for proper calculation of the amount payable to Stanley under the first decree of dissolution.

Issue 2

¶16 **Whether the District Court erred by including within the marital estate a mutual fund gifted to Stanley from his mother.**

¶17 The equitable division of the marital estate in dissolution proceedings is governed generally by factors set forth in § 40-4-202, MCA, without regard to the name in which title is held. *See also In re Marriage of Engen,* 1998 MT 153, 289 Mont. 299, 961 P.2d 738 and *In re Marriage of Fitzmorris* (1987), 229 Mont. 96, 99, 745 P.2d 353, 355

(mandating that the court equitably divide assets whether the title is in the name of the husband or wife or both). However, with regard to property acquired prior to marriage or by gift, bequest, devise or descent, other factors are relevant. These include the nonmonetary contribution of a homemaker; the extent to which such contributions have facilitated the maintenance of this property; and whether or not the property division serves as an alternative to a maintenance agreement. Section 40-4-202(1), MCA.

¶18 We have previously held that the legal analysis expressed in *In re Marriage of Engen* (1998), 1998 MT 153, 289 Mont. 299, 961 P.2d 738, will guide future decisions on the treatment of inherited properties and properties acquired outside the marriage. In *Engen* and in *Fitzmorris*, we stated that, consistent with the controlling statute, the proper factors for the court to consider in the distribution of assets in dissolution proceedings are the source of the assets and the parties' contributions to those assets during the marriage. In *In re Marriage of Herron* (1980), 186 Mont. 396, 608 P.2d 97, the seminal case interpreting § 40-4-202, MCA, we held that even where property was given to the couple jointly by the wife's father during the marriage, it was properly awarded to the wife when it was given to provide principally for her. Furthermore, if none of the value of the property is a product of contribution from the marital effort, the court can justifiably find that the non-acquiring spouse has no interest in the property. The couple should not share equally in assets that come into the marriage as gifts only to benefit one of them. *Marriage of Engen,* 289 Mont. at 307-08, 961 P.2d at 743, citing *Marriage of Herron*, 186 Mont. at 404-05, 608 P.2d at 101-02.

¶19 Here, the uncontroverted testimony is that the mutual fund was given to Stanley from his mother, solely for the benefit of Stanley. The fact that it was placed into a joint account with Ellen, or that some of the funds were later used to benefit the marital estate, is of no legal consequence under Montana law and precedent. The money was never commingled with other marital funds. We conclude that the District Court abused its discretion when it included the mutual fund as an asset of the marital estate. We reverse the District Court on this issue and direct that on remand the mutual fund be distributed to Stanley.

Issue 3

¶20 **Whether the District Court erred by including the boat and motor home in the marital estate.**

¶21 Under § 40-4-202, MCA, the character of the motor home and the boat are the same

as the mutual fund discussed above, and therefore the same analysis applies. Stanley received the motor home upon the passing of his mother; the boat was acquired prior to Ellen and Stanley's second marriage. Nothing in the record indicates that Ellen contributed in any way to an increase in value of either the motor home or the boat. Therefore, just as the mutual fund is not an asset of the marital estate, neither are the boat and the motor home. As we stated in *Engen*, whether we have included preacquired, gifted or inherited property in the marital estate and held that it must be distributed to the spouse to whom it was given or by whom it was preacquired, or simply held that it is not part of the marital estate, we have consistently treated such property differently than property acquired during a marriage through the joint efforts of the couple. *Marriage of Engen*, 289 Mont. at 309, 961 P.2d at 744. We conclude that the District Court abused its discretion when it included the boat and motor home in the marital estate. We reverse the District Court on this issue and direct that on remand Stanley should be awarded these assets.

Issue 4

¶22 **Whether the District Court erred by allocating post-separation debts incurred by Stanley to be his sole responsibility.**

23 Section 40-4-202, MCA, states that in dividing marital property, the court is to take into account many factors, including liabilities of the parties. In this case, the record indicates the court heard testimony regarding the nature of the debts at issue here. The uncontroverted testimony was that Stanley incurred the bulk of the debt in the waning days of the marriage and that he converted a credit balance at one dentist to offset work he had done at another dentist. The credit card debt was incurred solely by Stanley by his own admission. The court is to equitably apportion the marital estate, and consider the dissipation of value of the marital estate in its division of property. Section 40-4-202, MCA. The record establishes that Stanley was solely responsible for, and the sole beneficiary of, the dissipation that occurred as the marriage was ending. We conclude that the District Court did not abuse its discretion in concluding that Stanley is responsible for these debts, and the court's ruling is not clearly erroneous. We affirm the District Court's ruling on this issue.

Issue 5

¶24 **Whether the District Court properly distributed the marital estate.**

¶25 Because we have reversed the District Court with regard to the judgment from the first

divorce decree, and the disposition of the mutual fund, boat and motor home, we conclude that the District Court did not properly distribute the marital estate. We remand this matter for further proceedings consistent with our opinion on the foregoing issues.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER